FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 18 2017 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HARLEYSVILLE WORCESTER INSURANCE
COMPANY,

                       Plaintiff,

    -against-

MOHAN SHARMA, M.D., HITA SHARMA, M.D.,
CARING MEDICAL, LLC, SUKHADATA, LLC,
SUFFOLK FAMILY MEDICINE ASSOCIATES,
P.C., and JANE DOE, a Mentally Disabled Person,
Individually, and by her Mother and Natural
Guardian, Mary Doe,

                  Defendants.
-----------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-2474
(Wexler, J.)

APPEARANCES:

    RIKER, DANZIG, SCHERER, HYLAND & PERRETTI, LLP
    BY: Lance J. Kalik, Esq. and Peter M. Perkowski, Jr.
    Attorneys for Plaintiff
    500 Fifth Avenue, 49th Floor
    New York, New York 10110

    SCHWARTZ LAW, P.C.
    BY: Matthew J. Conroy, Esq.
    Attorneys for Defendants Hita Sharma, Mohan Sharma, Caring Medical, LLC and
    Sukhdata, LLC
    666 Old Country Road, 9th Floor
    Garden City, New York 11530

    SIMON LESSER, P.C.
    BY: Leonard F. Lesser, Esq.
    Attorneys for Defendant Jane Doe
    355 Lexington Avenue, 10th Floor
    New York, New York 10017

WEXLER, District Judge:

    Plaintiff Harleysville Insurance ("plaintiff," "Harleysville" or the "Insurer") commenced this diversity action for a declaration that it is not obligated to defend or indemnify its insureds in an underlying action brought against them by defendant Jane Doe in New York Supreme Court.

Currently before the Court are Harleyville's motion for summary judgment, *see* Motion, Docket Entry ("DE") [44], and two separate cross-motions for summary judgment submitted by defendant Jane Doe, DE [58], and by the remaining defendants. DE [52]. For the reasons set forth herein, the motions are denied.

## I. BACKGROUND

The facts are taken from the complaint and submissions of the parties on their motions. They are reviewed in the light most favorable to the nonmoving parties.

### A. The Underlying Action

Defendants Mohan Sharma ("Sharma") and Hita Sharma are husband and wife, and are both medical doctors. Defendant Sukhdata, LLC ("Sukhdata"), which is controlled by both Sharma defendants, owns the building located at 276 Smithtown Boulevard, Nesconset, New York (the "Building"). Caring Medical, LLC ("Caring Medical"), a medical practice owned and operated by Mohan Sharma, leased one of the units in the Building from Sukhdata.

On October 11, 2013, Mohan Sharma allegedly committed sexual misconduct against Jane Doe while she was sitting in an examination room at Caring Medical. At the time, Sharma was providing medical treatment to Doe's grandmother. Doe, who is also a patient of Sharma, recorded much of the encounter by cell phone. She filed a criminal complaint on October 12, 2013, and Sharma was arrested on October 13, 2013. He was ultimately charged with one count of Endangering an Incompetent, a Class E felony, and one count of Sexual Contact with an Incompetent, a Class A misdemeanor.

On February 11, 2014, Jane Doe and her mother, Mary Doe, filed a civil complaint in the Supreme Court of New York, Nassau County, against Sharma, Hita Sharma, Caring Medical, Sukhdata, Suffolk Family Medicine Associates, P.C., and Dinesh Sethi, M.D. (the "Underlying

2

Action"). An Amended Complaint in the Underlying Action was filed on April 11, 2014. The Amended Complaint states causes of action for (1) medical negligence and malpractice, (2) sexual assault, (3) civil battery, (4) negligent infliction of emotional distress, (5) intentional infliction of emotional distress, (6) negligent hiring, supervision, and retention, and (7) fraudulent conveyance. The fraudulent conveyance claim concerns the sale of the medical practice to Sethi on January 15, 2014 for $300,000.

**B. Mohan Sharma's Medical Condition**

On November 15, 2013, about one month after his arrest, Sharma presented at the emergency room at Flushing Hospital Medical Center with complaints of weakness, headache, dizziness, slurred speech, nausea, and difficulty swallowing and was admitted to the stroke unit. Declaration of Leonard F. Lesser ("Lesser Decl."), Ex. Q, DE [61]. Treatment notes from the hospital indicate that Sharma had been taking medication for migraine headaches for a long time, that he had been suffering from loss of interest and depression-like symptoms for over a year, and that he was taking Lexapro. Later on the same day, Sharma was transferred to North Shore University Hospital. The records from North Shore describe Sharma as having a history of migraines, depression, cognitive decline over a year, and "changes in level of consciousness with staring, possibly subtle cognitive dysfunction over the past year" and that he "might have been having seizures and cognitive deterioration related to his as yet undiagnosed underlying condition." The notes indicated a working diagnosis of "Leukoencepalopathy with white matter changes with left sided weakness." Lesser Decl., Ex. R. Sharma was discharged after five days and pursued outpatient treatment over the ensuing months. By February 2014, one doctor noted that Sharma was suffering from "Memory Loss as well as an abnormal MRI. At this time he is unable to participate in any meaningful conversation and will not be able to work." Lesser Decl.,

Ex. T. None of the records provide any opinion regarding Sharma's condition on the date of the incident, October 11, 2013.

It appears undisputed that Mohan Sharma is currently incapacitated from organic causes. Harleysville states that upon information and belief, the Underlying Action was stayed in December 2014 due to Mohan Sharma's mental incapacity, and Doe's counsel states that he was informed by the Assistant District Attorney on the criminal matter that "the prosecution will be consenting to Sharma's status as a mentally incapacitated person, pursuant to Crim Proc. Law §730.40, whereby a Final Order of Observation will be issued and the felony complaints against him dismissed on that basis." Lesser Decl., ¶24, DE [61]. Sharma was not deposed in this action due to his condition.

## C. The Insurance Coverage

### 1. The Policy and Relevant Exclusions

Harleysville issued a business owners policy, bearing policy number BOP073213G (the "Policy"), to Sukhdata and Caring Medical as named insureds for the period of November 2, 2012 to November 2, 2013 and with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. The policy covers "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." Policy, §II(A)(1)(a). It applies to "bodily injury" only if it "is caused by an 'occurrence' that takes place in the 'coverage territory.'" Policy, §II(A)(1)(b)(1)(a). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time." Policy, §II(F)(6), as amended by Endorsement. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy, §II(F)(13).

There are various Exclusions precluding coverage contained in the Policy, two of which may be implicated in this case. The Policy does not apply to bodily injury "expected or intended from the standpoint of the insured." Policy, §II(B)(1)(a). It also does not apply where the bodily injury was "caused by the rendering or failure to render any professional service" including "[m]edical, surgical, dental, x-ray or nursing services treatment, advice or instruction," and "[a]ny health or therapeutic service treatment, advice or instruction." Policy, §II(B)(1)(j)(4)&(5).

### 2. Harleysville's Coverage Positions

The Underlying Action was commenced on or about February 11, 2014. Hita Sharma forwarded a copy to Harleysville, and Harleysville acknowledged the claim on or about February 25, 2014. On March 26, 2014, Harleysville sent a Notice of Partial Disclaimer of Coverage and Offer of Defense under Reservation of Rights letter to Sharma, Hita Sharma, Sukhadata, and Caring Medical. In that letter, Harleysville took the position that it had no duty to defend or indemnify Sharma, but offered to defend Hita Sharma, Caring Medical, and Sukhadata subject to a reservation of rights.

As to Sharma, Harleysville advised that his sexual assault of Doe was not an occurrence within the meaning of the Policy, and that coverage was also excluded as expected or intended by the insured. Harleysville further disclaimed coverage for all insureds as to all the counts of the complaint alleging intentional conduct – sexual assault, battery, intentional infliction of emotional distress, and fraudulent conveyance – and the medical malpractice/ negligence claim as excluded under the professional services exclusion.

Notwithstanding its disclaimer and subject to a full reservation of rights, Harleysville initially agreed to defend Hita Sharma, Caring Medical, and Sukhdata. By letter dated April 11,

2014, however, Harleysville modified its coverage position. The letter indicates that Hita Sharma had informed Harleysville that she was not employed by, affiliated with, or had any ownership role with Caring Medical. As this left Mohan Sharma as the sole owner of Caring Medical, and Harleysville had previously disclaimed coverage for Sharma, the insurer determined that it would not defend or indemnify Caring Medical. Harleysville continued to agree to defend Sukhdata and Hita Sharma, in her capacity as a principal of Sukhadata, subject to a full reservation of rights.

### D. Procedural History

Harleysville commenced this declaratory judgment action on April 17, 2014. Defendant Dinesh Sethi entered into a stipulation to be bound be the judgment in this action and was dismissed as a defendant. *See* DE [5].[1] After discovery, the parties submitted the motions for summary judgment that are the subject of this order.

## II. LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). In determining a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all

---

[1] It is unclear what, if any, role is played in this case by defendant Suffolk Family Medicine Associates, P.C. ("SFMA"). According to the complaint, SFMA "was a domestic professional corporation" with its principal place of business at the Smithtown Building, and was owned, operated, maintained, supervised, managed and controlled by Mohan Sharma and/or Hita Sharma. SFMA answered the complaint and is represented by the same counsel as the Sharma and corporate defendants, but it is not a named insured on the Policy and has not moved for summary judgment.

reasonable inferences favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). After the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348 (1986)).

## B. Duty to Defend and Indemnify

Generally, "[a]n insured seeking to recover for a loss under an insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy." *Gongolewski v. Travelers Ins. Co.*, 252 A.D.2d 569, 675 N.Y.S.2d 299, 299 (2d Dep't 1998) (internal quotation marks omitted). An insurer has two distinct duties to its insured – to indemnify and to defend. An insurance company's duty to defend under New York law is "broader than its duty to pay." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981)). "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y. 2013) (internal quotation marks and citation omitted), *aff'd*, 548 F. App'x 716, 717 (2d Cir. 2013) (summary order).

An insurer must defend if there is a reasonable possibility that the insured will be held liable for an act or omission covered by the policy. *See Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82-83 (2d Cir. 2006) ("a defense obligation may be avoided only where there

is no possible factual or legal basis on which an insurer's duty to indemnify under any provision of the policy could be held to attach." (internal quotation and citation omitted)). In determining whether an insurer has the duty to defend, the analysis focuses on the four corners of the underlying complaint. If the claims asserted therein "'rationally' fall within coverage of the policy at issue, there is an obligation to defend." *Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP v. Underwriters at Lloyd's, London,* 918 F. Supp. 2d 114, 120 (E.D.N.Y. 2013) *(quoting Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 476 N.E.2d 272, 486 N.Y.S.2d 873 (1984)). If, however, "any one exclusion applies there can be no coverage." *See Maroney v. New York Cent. Mut. Fire Ins. Co.,* 5 N.Y.3d 467, 839 N.E.2d 886, 805 N.Y.S.2d 533, 535 (2005) (internal quotation and citations omitted). In order to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that could fairly be placed thereon." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006) (internal alteration and quotation omitted).

### III. DISCUSSION

#### A. Does the Incident Constitute an Occurrence Within the Meaning of the Policy?

The threshold question presented is whether the incident of October 11, 2013 was an "occurrence" within the meaning of the Policy. Although the Policy defines "occurrence" as an "accident," the term "accident" is not defined. Harleysville urges use of a dictionary definition that an accident is "an event that is not planned or intended: an event that occurs by chance," Pl's Memorandum of Law at 12, DE [44-1], and argues that the incident of October 11, 2013 cannot be an accident because sexual assault is an intentional act. Defendants claim that Mohan

Sharma did not have the capacity to form the requisite intent to commit the alleged sexual assault and thus the incident was a covered occurrence.

The parties do not dispute that Sharma sexually assaulted Doe on October 11, 2013, nor do they contest Sharma's current mental capacity. The key issue in dispute is Sharma's capacity on October 11, 2013 and whether his conduct on that date was "intentional." Defendants claim that the conduct was not intentional because of Sharma's medical condition, while Harleysville argues that his medical condition is irrelevant as intent is inferred by the nature of the act.

On the current record, there is insufficient evidence to determine Sharma's medical condition on or before October 11, 2013, the date of the incident involving Doe that led to his arrest, or the effect that condition had on his capacity to form intent. Defendants have provided various records from Sharma's treating physicians that suggest that the condition existed for some time, but the first records are dated November 15, 2013. Neither side has provided admissible expert testimony regarding whether Sharma was incapacitated on the date in question. On the other hand, there is testimony that Sharma continued to see patients and acted normally in the time leading to the incident.

The Court finds that Sharma's ability to form the requisite intent on October 11, 2013 is a material issue of fact necessary for the determination of whether there was an occurrence or accident within the meaning of the Policy. Accordingly, the motions for summary judgment are denied.

## B. Expected or Intended Exclusion

Harleysville further bases its denial of coverage on the Expected and Intended Exclusion, which excludes "bodily injury" that is "expected and intended from the standpoint of the insured." Policy (b). As there is a question of fact as to whether there was an occurrence under

the policy, a determination of whether the expected or intended exclusion applies is premature. Nonetheless, Harleysville's arguments regarding application of the exclusion still warrant brief discussion.

Under New York law, Harleysville argues, intent to cause injury is inferred from certain acts, including sexual assaults. *See Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 589 N.E.2d 365, 581 N.Y.S.2d 142 (1992). In *Mugavero,* a case involving sexual assault of a child, the Court of Appeals found that harm is inferred from that act regardless of the actor's subjective intent. The case does not, however, stand for the proposition that the act itself is always intentional. Indeed, the actor's capacity to commit the act was not at issue in *Mugavero,* as that Court specifically noted that none of the parties contended that the sexual conduct "could have been anything other than intentional." *Mugavero,* 79 N.Y. 2d at 159.; *see also Dodge v. Legion Ins. Co.,* 102 F. Supp. 2d 144, 151 (S.D.N.Y. 2000) (interpreting *Mugavero* and noting that in similar cases, "*if* the act is intentional, so is the harm, and the courts will not inquire into the perpetrator's subjective intent to cause the injury" (emphasis supplied)). Here, Sharma's capacity to form the requisite intent to commit the act itself is at issue. *See, e.g., Dinneny v. Allstate Ins. Co.,* 295 A.D.2d 797, 799, 744 N.Y.S.2d 74 (3rd Dep't 2002) (a triable issue of fact existed as to whether "at the time of the attack," the insured "may have been suffering from Alzheimer's-type dementia, with delusions" even though injuries were clearly expected when insured struck another person with a hatchet). Of course, if it is ultimately determined that Sharma did act intentionally on October 11, 2013, the harm from that act will be inferred pursuant to *Mugavero* and the expected and intended exclusion will likely apply.[2]

---

[2] The parties have raised additional grounds for summary judgment, however, the Court finds that the issue of Sharma's intent should be determined first and declines to address the remaining arguments at this time.

## IV. CONCLUSION

For the reasons set forth above, the motions [44], [52], and [58] are denied. A pretrial conference has been scheduled for **February 16, 2017 at 10:30 a.m.** in Courtroom 940 of the Central Islip courthouse. A trial date will be set at that time.

SO ORDERED.

/s/ LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 18, 2017